UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHNNY D. ROBERTS

                      Plaintiff,

    v.

ANDREW M. SAUL,[1] Commissioner of
Social Security,

                      Defendant.

**DECISION
and
ORDER

18-CV-01011-LGF
(consent)**

---

APPEARANCES:        LAW OFFICES OF KENNETH R. HILLER
Attorneys for Plaintiff
JEANNE ELIZABETH MURRAY, of Counsel
6000 Bailey Avenue
Suite 1A
Amherst, New York 14226

JAMES P. KENNEDY, JR.
UNITED STATES ATTORNEY
MARY PAT FLEMING, Of Counsel
Attorney for Defendant
Federal Centre
138 Delaware Avenue
Buffalo, New York 14202
    and
JUNE LEE BYUN
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
    and
DENNIS J. CANNING
Office of the General Counsel
Social Security Administration
Office of the General Counsel

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and pursuant to Rule 25(d) of the Federal Rules of Civil Procedure is automatically substituted as the defendant in this suit with no further action required to continue the action.

601 E. 12th Street, Room 965
Kansas City, MO 64106, and

## JURISDICTION

On October 7, 2019, this case was reassigned to the undersigned before whom the parties consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this Court's June 29, 2018 Standing Order. (Dkt. No. 12). The court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on motions for judgment on the pleadings, filed on April 2, 2019, by Plaintiff (Dkt. No. 8), and on May 31, 2019, by Defendant (Dkt. No. 10).

## BACKGROUND and FACTS

Plaintiff Johnny Roberts ("Plaintiff"), brings this action pursuant to the Social Security Act ("the Act"), seeking review of the Commissioner of Social Security ("the Commissioner" or "Defendant") decision denying his application for Supplemental Security Income ("SSI") benefits under Title II of the Act ("disability benefits"). Plaintiff, born on January 7, 1965 (R. 18),[2] has a high school education, and alleges that he became disabled on March 12, 2014, when he stopped working as a result of a left palm, flexor[3] tendon, ulnar and digital nerve laceration. (R. 401). On March 27, 2014, John Callahan, M.D. ("Dr. Callahan"), completed surgery on Plaintiff's left palm to repair Plaintiff's flexor[3] tendon and nerve. (R. 343-51). On February 18, 2016, Dr. Callahan

---

[2] "R" references are to the pages of the Administrative Record electronically filed by Defendant on February 1, 2019 (Dkt. No. 6).
[3] Flexor tendons connect an individual's forearm muscles to the bones of the fingers and thumb.

2

completed a second surgery on Plaintiff to repair contracture[4] from scarring in Plaintiff's first webspace.  (R. 352-57).

Plaintiff's application for disability benefits was initially denied by Defendant on July 28, 2014 (R. 82), and, pursuant to Plaintiff's request, an initial hearing was held before Administrative Law Judge Grenville W. Harrop, Jr. ("Judge Harrop"), on November 10, 2016, in Buffalo, New York, where Plaintiff, represented by Jean Murray, Esq. ("Murray") appeared and testified.  (R. 27-41).  Vocational Expert Tim Janikowski ("the VE" or "VE Janikowski"), also appeared and testified.  (R. 42-46).  A supplemental hearing was held before Administrative Law Judge William Weir ("Judge Weir" or "the ALJ"), on July 14, 2017, where Plaintiff, represented by Murray testified along with VE Janikowski.  (R. 47-72).  The ALJ's decision denying Plaintiff's claim was rendered on September 14, 2017.  (R. 11-18).  Plaintiff requested review by the Appeals Council, and on July 20, 2018, the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review.  (R. 1-4).  This action followed on September 14, 2018, with Plaintiff alleging that the ALJ erred by failing to find him disabled.  (Dkt. No. 1).

On April 2, 2019, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Dkt. No. 8-1) ("Plaintiff's Memorandum").  Defendant filed, on May 31, 2019, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Dkt. No. 10-1) ("Defendant's Memorandum").  On June 21, 2019, Plaintiff filed a reply to

---

[4] Contracture is the loss of joint mobility caused by tightening or shortening of ligaments, tendons, and muscles that surround a joint.

Defendant's memorandum ("Plaintiff's Reply"). (Dkt. No. 11). Oral argument was deemed unnecessary.

**DISCUSSION**

A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or the decision is based on legal error. *See* 42 U.S.C. 405(g); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence" means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).

**A.** <u>**Standard and Scope of Judicial Review**</u>

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the

4

opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d). The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled,

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[6] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, at * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's residual functional capacity ("RFC"), and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. 20 C.F.R. §§ 404.1520(g), 416.920(g). The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F.2d at 467.

---

[6] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

In reviewing the administrative finding, the court must follow the five-step analysis and 20 C.F.R. § 416.935(a) ("§ 416.935(a)"), to determine if there was substantial evidence on which the Commissioner based the decision. 20 C.F.R. § 416.935(a); *Richardson*, 402 U.S. at 410.

In this case, the ALJ determined that Plaintiff had the severe impairment of status post hand laceration and surgical repair. (R. 13). The ALJ further determined that Plaintiff's impairments do not meet or medically equal a listed impairment, and that Plaintiff had the RFC to perform light work with limitations to occasional lifting and carrying up to 27 pounds using his left non-dominant hand (R. 16), and has no past relevant work. (R. 18). Plaintiff does not contest the ALJ's findings at steps one through three of the disability review process but contends that the ALJ erred in evaluating Plaintiff's residual functional capacity assessment.

**E. <u>Residual functional capacity</u>**

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv) and prove that substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). To make such a

7

determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id.* An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294.

The Second Circuit requires that all complaints . . . must be considered together in determining . . . work capacity. *DeLeon v. Secretary of Health and Human Services,* 734 F.2d 930, 937 (2d Cir. 1984). Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform past work, 20 C.F.R. § § 404.1520(a)(4)(iv), and to prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker*, 626 F.2d 225 at 231. It is improper to determine a claimant's residual work capacity based solely upon an evaluation of the severity of the claimant's individual complaints. G*old v. Secretary of Health and Human Services*, 463 F.2d 38, 42 (2d Cir. 1972). To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such

that they permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id.* at 294.

An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294. In addition, the Commissioner must establish that the claimant's skills are transferrable to the new employment if the claimant was employed in a "semi-skilled" or "skilled" job. *Id.* at 294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296.

In this case, the ALJ found that Plaintiff had the residual functional capacity to perform light work with limitations to occasionally lifting and carrying up to 27 pounds with his left non-dominant hand (R. 16), afforded little weight to the finding of Maria T. Mclaughlin ("Ms. Mclaughlin"), Plaintiff's occupational therapist who opined that Plaintiff was 100 % disabled on March 31, 2016 (R. 386), and 93.75% disabled April 21, 2016, based on Plaintiff's inability to successfully complete a peg hole test with his left hand (R. 380), finding such assessments inconsistent with Plaintiff's activities of daily living and medical evidence in the record, and limited to the purview of the Commissioner. The ALJ afforded some weight to the opinion of consultative examiner Donna Miller, D.O. ("Dr. Miller"), who opined that Plaintiff had a mild to moderate limitation for repetitive use of Plaintiff's left hand (R. 18).

Plaintiff alleges that the ALJ's residual functional capacity assessment of Plaintiff is erroneous as the ALJ afforded insufficient weight to Ms. Mclaughlin's finding that Plaintiff was 100% disabled (93.75% disabled after improvement) (R. 386, 380), failed to include Plaintiff's subjective complaints, excluded the opinion of Plaintiff's hand surgeon Dr. Callahan, who opined that Plaintiff should not lift with his left hand and arm following Plaintiff's second hand surgery on February 18, 2016 (R. 354-57), improperly afforded some weight to the asserted stale opinion of Dr. Miller, who opined that Plaintiff had a mild to moderate limitation for repetitive lifting, bending, and carrying prior to Plaintiff's second hand surgery, and improperly relied on the ALJ's own lay opinion. Plaintiff's Memorandum at 15-21. Plaintiff further alleges that the ALJ failed to include a repetitive use limitation to Plaintiff's left arm and hand in the ALJ's residual functional capacity assessment and posed an incorrect hypothetical to the VE that included a limitation to lifting 27 pounds on Plaintiff's *right* side instead of Plaintiff's *left* side. (R. 18). Plaintiff's Memorandum at 18-20. Defendant maintains that that Ms. Mclaughlin's finding that Plaintiff was 100% disabled is a finding reserved to the ALJ, that the ALJ properly accounted for Dr. Miller's finding that Plaintiff had a moderate limitation to repetitive use by limiting Plaintiff to occasionally lifting and carrying up to 27 pounds, and that Dr. Miller's findings should not be considered stale as Plaintiff's condition remained unchanged following Dr. Miller's examination of Plaintiff on July 14, 2014. Defendant's Memorandum at 8-14.

The burden to demonstrate functional limitations is the Plaintiff's. *See Reynolds v. Commissioner of Social Security*, 2019 WL 2020999, at *4 (W.D.N.Y. May 8, 2019). ALJs, however, must always give good reasons for assigning weight to medical source

opinions.  *See Cunningham v. Colvin*, 2014 WL 6609497, at *6 (W.D.N.Y. Nov. 20, 2014) (ALJ must always give good reasons for the weight afforded to a medical source opinion).  Defendant correctly relies on 20 C.F.R. § 416.927(e)(2) ("§ 416.927(e)(2)"), to support Defendant's contention that disability findings are reserved to the Commissioner.  As relevant, 20 C.F.R. § 416.927(f)(1) provides

> . . .. opinion[s] from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the opinion of an acceptable medical source, including the opinion of a treating source.  For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.

20 C.F.R. § 416.927(f)(1).

In this case, the only evidence in the record during the period between Plaintiff's two hand surgeries on March 27, 2014 (R. 327-30) and February 18, 2016 (R. 349-55), are the consultative opinion of Dr. Miller on July 17, 2014 (R. 257), a visit to Amita Krishnan, M.D. ("Dr. Krishnan"), to establish primary care on October 7, 2014 (R. 294-96), and Plaintiff's visit on February 3, 2016, to the Erie County Medical Center ("ECMC"), for back pain.  (R. 284-86).  Significantly, on November 7, 2014, Dr. Krishnan noted that Plaintiff's left hand range of motion was abnormal (R. 294), and prescribed Gabapentin for Plaintiff's hand pain on November 10, 2014, after noting that Plaintiff experienced increased pain, numbness and tingling, and was unable to fully open his left hand.  (R. 300-01).  Plaintiff's continuing pain, numbness, and tingling indicated nerve damage, and, along with the contracture between Plaintiff's thumb and index finger that limited Plaintiff's ability to use his left hand, required further corrective

11

surgery. After undergoing such Z-plasty[7] corrective surgery performed by Dr. Callhan on his left hand on February 18, 2016 (R. 349-55), Ms. Mclaughlin provided occupational therapy to Plaintiff on March 22, 2016 (R. 388), March 31, 2016 (R. 382-88), April 21, 2016 (R. 375-81), April 26, 2016 (R. 367-74), and May 5, 2016 (R. 361-66). On March 31, 2016, Ms. Mclaughlin noted that Plaintiff wore a thermoplastic volar hand-based splint and took 39 seconds to complete a standardized hole peg test, a level of disability so severe that Plaintiff's results were outside of the range of evaluation and 100% disabled. (R. 388). On April 21, 2016, Ms. Mclaughlin noted that Plaintiff continued to wear a splint on his left hand, completed the hole peg test in 25 seconds scoring in the 25th percentile for Plaintiff's age and gender, reported constant left hand tingling with occasional sharp pain, and was unable to recognize the form of an object in his left hand without seeing the object. (R. 378). On May 5, 2016, Ms. Mclaughlin opined that Plaintiff's left hand mobility was sufficient enough that Plaintiff was able to stop attending occupational therapy. (R. 366).

"Light work" requires lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds, and the use of arms and hands to grasp, hold and turn objects. *See* 20 C.F.R. § 416.967(b), Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *6 (S.S.A Jan. 1, 1983), *Clyburn v. Berryhill,* 2017 WL 6014452, at *4 (W.D.N.Y. Dec. 5, 2017) (ability to use only one arm or hand limits claimant's ability to hold, lift and carry objects and the ability to perform light work)). In this case, Discussion, *supra* at 11-12, substantial evidence supports that Plaintiff was not able to

---

[7] Z-plasty is a plastic surgery used to improve operative function of a scarred area.

12

use his left arm for grasping, holding and turning objects, skills required to perform the lifting and carrying requirements of light work, for the period between March 27, 2014, and May 5, 2016, the date upon which Ms. Mclaughlin opined that Plaintiff had sufficient use of his left hand to no longer require occupational therapy.

The court notes that Plaintiff did not raise the issue of a closed period of disability prior to filing his motion for judgment on the pleadings and has therefore waived it. *See Rosado v. Berryhill*, 2018 WL 618103, at * 5 (W.D.N.Y. Jan. 30, 2018) (citing *Hapstack v. Commissioner of Social Security*, 2003 WL 22232046, at *12 (N.D.N.Y. Sept. 26, 2003)). Defendant, however, does not maintain that Plaintiff is precluded from raising the issue and argues against Plaintiff on the merits of the issues instead. Notwithstanding Plaintiff's failure to timely raise this issue, in accordance with the court's obligation to broadly construe the Act and award benefits where supported by the record, the court addresses the issue and finds the ALJ's determination that Plaintiff is able to occasionally lift and carry up to 27 pounds with his left hand for the period between March 27, 2014, and May 5, 2016, is without support of substantial evidence because the hypothetical posed to the VE did not include an inability to use Plaintiff's non-dominant left arm and hand. *See Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990) (instructing courts to broadly construe the Act, a remedial statute which must be liberally applied its intention is inclusion rather than exclusion); *Robertson v. Berryhill*, 2017 WL 3574626, at *2 (W.D.N.Y. Aug. 18, 2017 ) (in accordance with Second Circuit law instructing courts to broadly construe the Social Security Act, a court may consider a claim for a closed period of disability not raised at the administrative level) (citing *Emery v. Astrue*, 2012 WL 1910090, at *6 (D.Vt. Apr. 9, 2012) (citing *Dousewicz v.*

*Harris*, 646 F.2d 771, 773 (2d Cir. 1981))). Accordingly, remand is required to afford the ALJ the opportunity to solicit supplemental testimony from a VE, and pose a proper hypothetical to the VE that includes whether any jobs exist that an individual like Plaintiff, with no ability to lift and carry with his non-dominant left hand for the period between March 27, 2014 and May 5, 2016, would be able to perform in the regional and national economy. Should the VE testify that jobs exist that Plaintiff would be able to perform during such closed period, the ALJ's disability determination that Plaintiff is not disabled is supported by substantial evidence, and the Clerk of Court is directed to close the file. Alternatively, should the VE testify that jobs do not exist that the Plaintiff would be able to perform during such closed period, the matter should be REMANDED for calculation of benefits.

## CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc. No. 8) is GRANTED in part; Defendant's motion (Doc. No. 10) is DENIED. The matter is REMANDED to the ALJ for further proceedings consistent with this DECISION and ORDER.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: October 28, 2019
           Buffalo, New York